## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAYMOND M. SPEARS,                    )
                                      )
                    Plaintiff,        )
                                      )
         v.                           )         1:22CV350
                                      )
KILOLO KIJAKAZI,                      )
Acting Commissioner of Social         )
Security,                             )
                                      )
                    Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Raymond M. Spears, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 10; see also Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 282-99), alleging a disability onset date of July 25, 2018 (<u>see</u> Tr. 282, 286, 290). Upon denial of those applications initially (Tr. 92-137, 188-98) and on reconsideration (Tr. 138-85, 201-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 219). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 62-91.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 44-56.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 33-38, 278-81, 387-88), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2022.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since July 25, 2018, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: Degenerative Joint Disease, Anxiety, Depression, Plantar Fasciitis, and Schizoaffective Disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

5.   . . . [Plaintiff] has the residual functional
capacity to perform sedentary work . . . except no
climbing ladders, ropes or scaffolds; only occasional
climbing stairs or balancing or balancing [sic]; frequent
kneeling, stooping, crouching and crawling; limited to
simple routine tasks as in unskilled work with no public
contact; only occasional contact with co-workers and
supervisors in a work environment with no frequent
changes in work processes or procedures; no high
production quotas and no assembly line work.

. . .

6.   [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
other jobs that exist in significant numbers in the
national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from July 25, 2018, through the
date of this decision.

(Tr. 50-56 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

3

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted).  "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal
quotation marks omitted).  "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence."  Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted).  "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

<u>**B. Assignments of Error**</u>

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ failed to include significant work-related mental restrictions identified in a different section of the hearing decision in the [RFC] assessment[,] . . . thereby committ[ing] a reversible error" (Docket Entry 9 at 4 (bold font and single-spacing omitted)); and

2) "the ALJ failed to identify and resolve actual and apparent conflicts between the [<u>Dictionary of Occupational Titles</u> ('<u>DOT</u>')] and a [VE]'s testimony[,] . . . therefore committ[ing] a reversible error of law at step five of the [SEP] by relying on the [VE]'s testimony to find [Plaintiff] . . . not disabled" (<u>id.</u> at 6-7 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 8-24.)

**1. Mental RFC**

In Plaintiff's first issue on review, he argues that "the ALJ failed to include significant work-related mental restrictions identified in a different section of the hearing decision in the [RFC] assessment[,] . . . thereby committ[ing] a reversible error." (Docket Entry 9 at 4 (bold font and single-spacing omitted).) In

---

[4] (...continued)
review does not proceed to the next step.").

particular, Plaintiff points out that, "[a]t step three of [the SEP], the ALJ found that[,] '[w]ith regard to concentrating, persisting or maintaining pace [('CPP')], Plaintiff] ha[d] a <u>moderate</u> limitation'" (<u>id.</u> at 4-5 (quoting Tr. 51) (emphasis in original)), as well as "clarified th[at] finding by stating that [Plaintiff 'wa]s likely to tolerate the stresses of day-to-day work activity with moderate to severe difficulty due to his psychotic symptoms and low frustration tolerance along with labile affect,'" and that Plaintiff's "'comprehension, emotions, attention, and understanding [we]re adequate to repetitive, simple tasks but his ability to sustain th[o]se tasks m[ight] be limited'" (<u>id.</u> at 5 (quoting Tr. 51)). Plaintiff maintains that the ALJ's failure to include those limitations in the mental RFC violates Social Security Ruling 85-15, <u>Titles II and XVI: Capability to Do Other Work — The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments</u>, 1985 WL 56857 (1985) ("SSR 85-15"). (<u>Id.</u>; <u>see also</u> <u>id.</u> at 4 (quoting SSR 85-15, 1985 WL 56857, at *6 ("Any impairment-related limitations created by an individual's response to the demands of work . . . must be reflected in the RFC assessment."))). Those contentions lack merit.

At step three of the SEP, the ALJ provided the following analysis of the paragraph B criteria of Listings 12.03 (Schizophrenia Spectrum and Other Psychotic Disorders), 12.04

(Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders):

> In understanding, remembering or applying information, [Plaintiff] has a <u>moderate</u> limitation. During the consultative [psychological] examination [by Dr. Ashley King on May 28, 2019], it was noted that [Plaintiff's] mental health functioning is below expected for someone of his education and social/vocational background. In interacting with others, [Plaintiff] has a <u>moderate</u> limitation. [He] would likely relate with difficulty to co-workers and supervisors due to his temper and bizarre thinking. With regard to [CPP], [Plaintiff] has a <u>moderate</u> limitation. <u>He is likely to tolerate the stresses of day-to-day work activity with moderate to severe difficulty due to his psychotic symptoms and low frustration tolerance along with labile affect. His comprehension, emotions, attention, and understanding are adequate to repetitive, simple tasks but his ability to sustain those tasks may be limited.</u> As for adapting or managing oneself, [Plaintiff] has experienced a <u>mild</u> limitation. He did not allege that he has difficulty with his [activities of daily living] for mental reasons.

(Tr. 51 (emphasis added) (emphasis on the word moderate supplied by ALJ).)

As an initial matter, the ALJ's above-emphasized rationale for the moderate limitation in CPP recites nearly verbatim the opinions of consultative psychological examiner Dr. King. (<u>Compare</u> Tr. 51, <u>with</u> Tr. 419.) Significantly, however, the ALJ later found Dr. King's opinion regarding Plaintiff's ability to tolerate work stresses "not persuasive" as "contradicted by the subsequent [mental health] treatment notes in which [Plaintiff] himself denie[d] any symptoms once medication [wa]s started." (Tr. 54 (citing Tr. 421-549).) Moreover, the ALJ deemed "persuasive" (<u>id.</u>) the state agency psychological consultants' opinions that, despite

10

moderate limitation in CPP (see Tr. 104, 126, 150, 173), Plaintiff could sustain the performance of simple, routine tasks (see Tr. 111, 133, 158, 181). Thus, the ALJ appeared to give Dr. King's opinions regarding Plaintiff's abilities to tolerate work stresses and to sustain the performance of simple tasks the benefit of the doubt to find a moderate limitation in CPP at step three of the SEP.

To the extent Plaintiff argues that SSR 85-15 (or some other authority) required the ALJ to expressly include in the RFC either the "moderate limitation" in CPP (Tr. 51), or the "moderate to severe difficulty" in tolerating work stresses and the possible inability to "sustain" performance of "repetitive, simple tasks" discussed in connection with that CPP finding (id.), that argument falls short. As the ALJ recognized, his paragraph B criteria ratings at step three of the SEP, including the moderate limitation in CPP (see id.) did not constitute an RFC assessment, "but [we]re used to rate the severity of [Plaintiff's] mental impairments at steps 2 and 3 of the [SEP]," and the mental RFC "assessment used at steps 4 and 5 of the [SEP] require[d] a more detailed assessment of the areas of mental functioning" (Tr. 52). See Social Security Ruling 96-8p, Titles II and XVI: Determining Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *4 (July 2, 1996) ("SSR 96-8p") ("The [ALJ] must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not

11

an RFC assessment . . . .  The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in [Section] 12.00 of the Listing of Impairments.").  The ALJ thus labored under no obligation to include the specific language relied on by Plaintiff in the RFC merely because the ALJ discussed it at step three.

"While SSR 96-8p does state that the [paragraph "B"] findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that . . . the [paragraph "B"] findings play no role in steps four and five."  Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004).  In that regard, the United States Court of Appeals for the Fourth Circuit has held that "an ALJ does not account for a claimant's [moderate] limitations in [CPP] by restricting the [RFC] to simple, routine tasks or unskilled work[, because] the ability to perform simple tasks differs from the ability to stay on task[, and o]nly the latter limitation would account for a claimant's limitation in [CPP]."  Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks and citation omitted).  That court, however, noted that, even where the RFC did not contain a restriction addressing a claimant's ability to stay on task, that circumstance would not warrant remand if the ALJ "explain[ed] why [a] moderate limitation

in [CPP] at step three d[id] not translate into a limitation in [the RFC]." Id. As a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (unpublished) (adopting recommendation of magistrate judge) (emphasis added).

Here, the mental RFC's limitation to "no high production quotas or assembly line work" (Tr. 52) sufficiently accounted for Plaintiff's moderate limitation in CPP, see Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished) (holding that restriction to "job that is non-production oriented" accounted for "moderate limitation in [the p]laintiff's ability to stay on task"), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). Furthermore, as noted above, the ALJ rejected Dr. King's opinion regarding Plaintiff's ability to tolerate work stresses as "contradicted by the subsequent treatment notes." (Tr. 54.) Moreover, Dr. King's opinion that Plaintiff's ability to sustain repetitive, simple tasks "may" be limited (Tr. 419) does not equate

13

to an opinion that Plaintiff could <u>not</u> sustain the performance of such tasks, and the ALJ expressly credited the state agency psychological consultants' opinions (<u>see</u> Tr. 54) that, notwithstanding moderate deficit in CPP (<u>see</u> Tr. 104, 126, 150, 173)), Plaintiff remained able to <u>sustain</u> the performance of simple, repetitive tasks (<u>see</u> Tr. 111, 133, 158, 181). Accordingly, the mental RFC adequately captured Plaintiff's "impairment-related limitations created by [his] response to the demands of work," SSR 85-15, 1985 WL 56857, at *6.

In light of the foregoing analysis, the Court should deny relief on Plaintiff's first assignment of error.

## 2. Conflicts Between <u>DOT</u> and VE Testimony

In Plaintiff's second and final issue on review, he contends that "the ALJ failed to identify and resolve actual and apparent conflicts between the [<u>DOT</u>] and a [VE]'s testimony[,] . . . therefore committ[ing] a reversible error of law at step five of the [SEP] by relying on the [VE]'s testimony to find [Plaintiff] . . . not disabled" (Docket Entry 9 at 6-7 (single-spacing and bold font omitted)) in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, at *2-4 (Dec. 4, 2000) ("SSR 00-4p") (Docket Entry 9 at 8-9) and <u>Pearson v. Colvin</u>, 810 F.3d 204, 208-12

14

(4th Cir. 2015) (Docket Entry 9 at 9-10). Specifically, Plaintiff asserts that "[t]he [DOT] listing for Surveillance-System Monitor establishes that the occupation requires communication with public law enforcement officials[ which ] conflicts with the VE's testimony that a person restricted to no public contact can perform th[at] occupation."  (Id. at 10-11 (all-caps font omitted) (referencing DOT, No. 379.367-010 ("Surveillance-System Monitor"), 1991 WL 673244 (G.P.O. 4th ed. rev. 1991)).)  Plaintiff further argues that the DOT listings for the jobs of Machine Tender and Bench Hand reflect they entail "production" and thus "necessarily impl[y] that both occupations likely require production quotas[, which ] creates an apparent conflict with . . . the VE's testimony that a person restricted to no high production quotas can perform th[ose] occupations."  (Id. at 12 (referencing DOT, No. 731.685-014 ("Stuffer"), 1991 WL 679811, and DOT, No. 715.684-026 ("Bench Hand"), 1991 WL 679344).)[5]  Plaintiff additionally deems "false" the ALJ's statement "that the VE 'testified that the [DOT] d[id] not address mental limitations such as interaction with others or simple routine tasks'" (id. (quoting Tr. 56) (internal quotation marks omitted)), and points out that "the ALJ [did not] ask the VE if his testimony conflict[ed] with the [DOT]" (id. at 13 (citing Tr. 56)).  Plaintiff's arguments ultimately miss the mark.

---

[5] The DOT identifies as "Stuffer" the job the VE and ALJ called "Machine Tender." (Compare DOT, No. 731.685-014 ("Stuffer"), 1991 WL 679811, with Tr. 56, 89). This Recommendation will refer to the job as "Machine Tender," the name used by the VE and ALJ.

Case 1:22-cv-00350-TDS-LPA   Document 12   Filed 04/12/23   Page 15 of 26

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. . . . [A]s part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant an "obvious" one).

In this case, the ALJ first queried the VE whether an individual with Plaintiff's age, education, and work history, and who could perform sedentary work with no climbing of ladders, ropes, and scaffolds, occasional climbing of stairs and balancing, and frequent kneeling, stooping, crouching, and crawling, and involving unskilled work with no public contact, occasional contact

16

with co-workers and supervisors, no frequent changes, <u>no high production quotas</u>, and no assembly line work could perform "any unskilled sedentary jobs." (Tr. 88.) In response, the VE opined that such an individual could perform the jobs of Machine Tender, Bench Hand, and Surveillance-System Monitor, and provided the corresponding <u>DOT</u> codes for the three jobs, as well as their incidence in the national economy. (<u>See</u> Tr. 88-89.) Following that exchange, Plaintiff's attorney declined to ask the VE any questions on cross-examination (<u>see</u> Tr. 90), and the ALJ closed the hearing (<u>see</u> Tr. 90-91). The ALJ did not, at any time during the hearing, ask the VE whether any conflicts existed between his testimony and the <u>DOT</u>. (<u>See</u> Tr. 64-91.)

The ALJ subsequently issued a decision finding Plaintiff not disabled (<u>see</u> Tr. 44-56), which adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled sedentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: Machine Tender, [<u>DOT</u>] Code 731.685-014, 275,000 jobs in the national economy; Bench Hand, [<u>DOT</u>] Code 715.684-026, 84,000 jobs in the national economy; and Surveillance[-]System Monitor, [<u>DOT</u>] Code 379.367-010, 41,000 jobs in the national economy.
>
> Each job provided is classified as unskilled [Specific Vocational Preparation ('SVP')] 2, at the sedentary exertional level.

17

> Pursuant to SSR 00-4p, [VE]'s testimony is accepted, as
> it does not appear to conflict with the information
> contained in the [DOT]. However, it is noted that the
> [VE] testified that the [DOT] does not address mental
> limitations such as interaction with others or "simple
> routine tasks," and in this regard, the [VE]'s testimony
> is based on professional experience.

(Tr. 55-56 (emphasis added) (table format for jobs information altered).)

Here, the ALJ did not fully discharge his duty under SSR 00-4p, because he failed to inquire of the VE whether any conflicts existed between his testimony and the DOT. (See Tr. 64-91.) Moreover, despite the ALJ's remark "that the [VE] testified that the [DOT] d[id] not address mental limitations such as interaction with others or 'simple routine tasks,'" the hearing transcript fails to reflect any such testimony by the VE, or any testimony that, as to matters not covered by the DOT, the VE relied upon his "professional experience" (Tr. 56). (See Tr. 64-91). For the reasons more fully explained below, however, the ALJ's errors in that regard remains harmless. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Critchley v. Colvin, No. 5:15-CV-08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016) (unpublished) (finding ALJ's failure to question VE about potential conflicts harmless where "no conflict, actual or

18

apparent," existed), <u>recommendation adopted</u>, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (unpublished).

With regard to the job of Surveillance-System Monitor, Plaintiff argues that an actual conflict existed between the <u>DOT</u>'s description of that job's duties as involving "communication with public law enforcement officials" (Docket Entry 9 at 10 (referencing <u>DOT</u>, No. 379.367-010 ("Surveillance-System Monitor"), 1991 WL 673244)) and "the VE's testimony that a person restricted to no public contact can perform th[at] occupation" (<u>id.</u> at 10-11 (referencing Tr. 88-89)). Plaintiff's argument raises the <u>possibility</u> of a conflict between the <u>DOT</u> and the VE's testimony with regards to public contact, as the <u>DOT</u> description of the duties of Surveillance-System Monitor provides as follows:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and <u>notifies authorities by telephone of need for corrective action</u>[.] Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and <u>telephones police or other designated agency to notify authorities of location of disruptive activity</u>. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

<u>DOT</u>, No. 379.367-010 ("Surveillance-System Monitor"), 1991 WL 673244 (emphasis added). In addition, the <u>DOT</u> rates the degree of working with "<u>People</u>" as "6" or "<u>Significant</u>," <u>id.</u> (emphasis added), which entails "[t]alking with and/or signaling people to convey or exchange information[, and i]ncludes giving assignments

19

and/or directions to helpers or assistants," DOT, App'x B ("Explanation of Data, People, and Things"), 1991 WL 688701 (G.P.O. 4th ed. rev. 1991). Further, the DOT reflects that the functions of "Hearing" and "Talking" occur "Frequently - Exists from 1/3 to 2/3 of the time." DOT, No. 379.367-010 ("Surveillance-System Monitor"), 1991 WL 673244 (emphasis added).

Courts are split on whether the Surveillance-System Monitor job conflicts with RFC restrictions to limited or no public contact. Compare Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) ("The ALJ expressly informed the VE that [the p]laintiff would be restricted to no direct public contact. Yet the VE stated the [Surveillance-System Monitor] job[] would be suitable, saying: '[The] job[] . . . [is a] fairly solitary job[]. . . . We see no conflict between the [DOT] and this testimony."), Marco R. M. v. Kijakazi, No. 2:21CV38, 2022 WL 257840, at *6 (E.D. Va. Jan. 10, 2022) (unpublished) ("[The p]laintiff cites no authority for the proposition that the [S]urveillance[-S]ystem [Monitor] job, requiring frequent talking, necessarily conflicts with a limitation to no interaction with the public."), recommendation adopted, 2022 WL 256501 (E.D. Va. Jan. 26, 2022) (unpublished), Harper v. Berryhill, Civ. No. 17-1682, 2019 WL 652358, at *2 (W.D. Pa. Feb. 15, 2019) (unpublished) (holding that Surveillance-System Monitor job's requirement of "frequent talking does not necessarily equate to contact with the public"), Neeley v. Berryhill, C.A. No. 16-180,

2017 WL 3670180, at *9 (D. Del. Aug. 25, 2017) (unpublished) ("[T]he [S]urveillance[-S]ystem [M]onitor position requirements do not conflict with [the plaintiff]'s RFC[, which limited her to 'occasional brief superficial interaction with the public'], because little involvement with people is required."), Dickmeier v. Commissioner, Soc. Sec. Admin., No. 2:14CV967, 2015 WL 8514188, at *6 (D. Or. Dec. 11, 2015) (unpublished) ("The [DOT] does not, as [the plaintiff] asserts, indicate that the [Surveillance-System Monitor] job requires communication with members of the public to carry out the various tasks. Again, to find a conflict between the VE's testimony and the [DOT], the [c]ourt would have to read a requirement into the [DOT] that is not expressly stated." (internal quotation marks, citation, and brackets omitted)), Baker v. Colvin, No. 14CV371, 2015 WL 5775227, at *2 (N.D. Okla. Sep. 29, 2015) (unpublished) ("Nothing within the [Surveillance-System Monitor] job description or people rating exceeds the RFC limitation of . . . no public interaction."), and Alcott v. Colvin, No. 4:13CV1074, 2014 WL 4660364, at *8-9 (W.D. Mo. Sep. 17, 2014) (unpublished) ("Nothing in the job description for [S]urveillance-[S]ystem [M]onitor includes interaction with the public."), with Davis v. Kijakazi, No. 4:20CV3390, 2022 WL 18396221, at *6 (S.D. Tex. May 2, 2022) (unpublished) ("This [c]ourt is persuaded by cases that find a direct conflict between a plaintiff's limitation to 'occasional' contact and the [DOT]'s

21

description of the [S]urveillance[-System M]onitor job.  Contrary cases downplay the extent to which a surveillance monitor must engage with people."), Beaupre v. Berryhill, No. 2:18CV2032, 2020 WL 343698, at *6 (D. Nev. Jan. 21, 2020) (unpublished) (holding that "the ALJ did not ask the VE whether his testimony was consistent with the [DOT, a]nd the court cannot conclude that this error was harmless, given the apparent conflict that exists between the [p]laintiff's social limitations (to occasional contact with others) and the job description[] for . . . [S]urveillance[-S]ystem [M]onitor[, which] . . . involves frequent talking" (internal citation omitted)), Richard v. Colvin, Civ. No. 12-5671, 2013 WL 4522082, at *9 (W.D. Wash. Aug. 27, 2013) (unpublished) ("The [DOT] . . . provide[s] that the [Surveillance-System Monitor] job involves notifying the police or 'other designated' agencies or authorities by telephone.  It is certainly possible that notifying such outside agencies or authorities by telephone constitutes contact with the public.  If so, the [VE]'s testimony would conflict with the description of the job of [S]urveillance-[S]ystem [M]onitor contained in the [DOT], which the ALJ failed to resolve."), and Adams v. Astrue, No. C 10-2008, 2011 WL 1833015, at *6 (N.D. Cal. May 13, 2011) (unpublished) ("In the section titled 'Temperaments' in the [S]urveillance[-S]ystem[ M]onitor job description, the [DOT] lists 'dealing with people' as part of the job.  The [DOT] provides no further description or explanation of

22

this ability. . . .  It is possible that 'dealing with people' includes dealing with the general public; if so, [the plaintiff's] limitation on her interaction with the general public may conflict with the information provided in the [DOT] . . . .  There is nothing in the record to resolve this discrepancy.  Therefore, the VE created an apparent conflict when he testified that a person with a limitation in her ability to interact with the general public could perform a job that the [DOT] indicated requires an unspecified frequency of contact with unspecified people." (internal citation omitted)).

This Court need not resolve that conflict in persuasive authority on the matter because, for the reasons more fully detailed below, Plaintiff has not shown that the ALJ failed to identify and resolve any apparent conflict between the VE and the DOT respecting the two remaining jobs, Machine Tender and Bench Hand.  See Galindo v. Astrue, No. CV 09-1460, 2009 WL 10680210, at *2 (C.D. Cal. Dec. 21, 2009) (holding that, "assuming arguendo that the VE's testimony about [the p]laintiff's ability to perform the job[] of . . . [S]urveillance[-S]ystem [M]onitor . . . was erroneous, the error was harmless," where "the VE's testimony that a person with [the plaintiff's] limitations could work [in three other jobs], [and] that th[o]se jobs existed in significant numbers in the . . . national economy" remained valid), aff'd, 454 F. App'x 576 (9th Cir. 2011).

23

Plaintiff argues that the DOT listings for the jobs of Machine Tender and Bench Hand reflect that they entail "production" and thus "necessarily impl[y] that both occupations likely require production quotas[, which ] creates an apparent conflict with . . . the VE's testimony that a person restricted to no high production quotas can perform th[ose] occupations." (Docket Entry 9 at 12 (emphasis added) (referencing DOT, No. 731.685-014 ("Stuffer"), 1991 WL 679811, and DOT, No. 715.684-026 ("Bench Hand"), 1991 WL 679344).) Plaintiff's argument fails to carry the day, because he provides no authority to support his speculative attempt to read "high production quotas" into the Machine Tender and Bench Hand jobs merely because those jobs involve "production." (See id.) Indeed, courts have rejected that argument. See Walters v. Berryhill, No. 3:17CV538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018) (unpublished) ("[T]he [court] is persuaded [the plaintiff] could perform the . . . [Machine Tender job], with the [no production rate work] limitation[] set forth by the ALJ."), recommendation adopted, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019) (unpublished); Rozzelle v. Berryhill, No. 3:17CV127, 2018 WL 1187781, at *5 (W.D.N.C. Mar. 7, 2018) (unpublished) (holding that DOT description for Machine Tender job "d[id] not hint at what pace [the p]laintiff would be expected to work," and that, although "[the p]laintiff would be involved in the production of products, [] a conflict with the RFC would require a suggestion that [the

24

p]laintiff would work at a fast pace, such as on an assembly line or conveyer belt"); see also Martinez v. Berryhill, No. 3:17-CV-186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) (rejecting the "[p]laintiff['s] argu[ment] that the[ dowel inspector job is] involved with the production process of dowels . . ., and therefore must conflict with the limitation of not working at a production rate pace[,] . . . as such a[n alleged] conflict implies that being involved with the production of any good in any way implies a production rate or pace[, and n]othing in the [DOT]'s description for dowel inspector . . . has anything to do with rate or pace, which is what the [no production-rate pace] limitation . . . was designed to restrict"), aff'd sub nom. Martinez v. Saul, 776 F. App'x 175 (4th Cir. 2019).

In short, because Plaintiff has not shown "where the [VE's] testimony seem[ed] to, but d[id] not necessarily, conflict with the [DOT]," Pearson, 810 F.3d at 209, regarding the Machine Tender and Bench Hand jobs, Plaintiff's second and final issue on review falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket

25

Entry 8) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

April 12, 2023